**CLEARY GOTTLIEB STEEN & HAMILTON LLP**

One Liberty Plaza
New York, NY 10006-1470
T: +1 212 225 2000
F: +1 212 225 3999

clearygottlieb.com

WASHINGTON, D.C. • PARIS • BRUSSELS • LONDON • MOSCOW
FRANKFURT • COLOGNE • ROME • MILAN • HONG KONG
BEIJING • BUENOS AIRES • SÃO PAULO • ABU DHABI • SEOUL

THOMAS J. MOLONEY
RICHARD S. LINCER
JAMES A. DUNCAN
STEVEN M. LOEB
CRAIG B. BROD
NICOLAS GRABAR
CHRISTOPHER E. AUSTIN
HOWARD S. ZELBO
DAVID E. BRODSKY
ARTHUR H. KOHN
RICHARD J. COOPER
JEFFREY S. LEWIS
PAUL J. SHIM
STEVEN L. WILNER
ANDRES DE LA CRUZ
DAVID C. LOPEZ
MICHAEL A. GERSTENZANG
LEV L. DASSIN
NEIL Q. WHORISKEY
JORGE U. JUANTORENA
MICHAEL D. WEINBERGER
DAVID LEINWAND
DIANA L. WOLLMAN
JEFFREY A. ROSENTHAL
MICHAEL D. DAYAN
CARMINE D. BOCCUZZI, JR.
JEFFREY D. KARPF
KIMBERLY BROWN BLACKLOW
ROBERT J. RAYMOND
SUNG K. KANG
SANDRA L. FLOW
FRANCISCO L. CESTERO
FRANCESCA L. ODELL
WILLIAM L. MCRAE
JASON FACTOR
JOON H. KIM

MARGARET S. PEPONIS
LISA M. SCHWEITZER
JUAN G. GIRÁLDEZ
DUANE MCLAUGHLIN
BREON S. PEACE
CHANTAL E. KORDULA
BENET J. O'REILLY
ADAM E. FLEISHER
SEAN A. O'NEAL
GLENN P. MCGRORY
MATTHEW P. SALERNO
MICHAEL J. ALBANO
VICTOR L. HOU
ROGER A. COOPER
AMY R. SHAPIRO
JENNIFER KENNEDY PARK
ELIZABETH LENAS
LUKE A. BAREFOOT
JONATHAN S. KOLODNER
DANIEL ILAN
MEYER H. FEDIDA
ADRIAN R. LEIPSIC
ELIZABETH VICENS
ADAM J. BRENNEMAN
ARI D. MACKINNON
JAMES E. LANGSTON
JARED GERBER
COLIN D. LLOYD
COREY M. GOODMAN
RISHI ZUTSHI
JANE VANLARE
DAVID H. HERRINGTON
KIMBERLY R. SPOERRI
AARON J. MEYERS
DANIEL C. REYNOLDS
ABENA A. MAINOO

HUGH C. CONROY, JR.
JOSEPH LANZKRON
MAURICE R. GINDI
KATHERINE R. REAVES
RAHUL MUKHI
ELANA S. BRONSON
MANUEL SILVA
KYLE A. HARRIS
LINA BENSMAN
ARON M. ZUCKERMAN
RESIDENT PARTNERS

SANDRA M. ROCKS
JUDITH KASSEL
PENELOPE L. CHRISTOPHOROU
BOAZ S. MORAG
MARY E. ALCOCK
HEIDE H. ILGENFRITZ
KATHLEEN M. EMBERGER
AVRAM E. LUFT
ANDREW WEAVER
HELENA K. GRANNIS
JOHN V. HARRISON
CAROLINE F. HAYDAY
NEIL R. MARKEL
KENNETH S. BLAZEJEWSKI
LAURA BAGARELLA
SHIRLEY M. LO
JONATHAN D.W. GIFFORD
SUSANNA E. PARKER
DAVID W.S. YUDIN
RESIDENT COUNSEL

LOUISE M. PARENT
OF COUNSEL

D: +1 212-225-2829
lbarefoot@cgsh.com

May 15, 2020

VIA ECF

The Honorable Barbara Moses
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, New York 10007-1312

Re:  DoubleLine Capital, LP v. Odebrecht S.A., No. 1:17-cv-4576-GHW-BCM

Dear Judge Moses:

We write on behalf of defendants CNO S.A., Odebrecht Engenharia E Construção S.A. and Odebrecht S.A. - Em Recuperação Judicial ("Odebrecht" and together with the other defendants in the above-captioned action, "Defendants") in response to the May 12, 2020 letter (the "May 12 Letter") filed on behalf of plaintiffs DoubleLine Capital LP, DoubleLine Income Solutions Fund, and DoubleLine Funds Trust (on behalf of its:  1) DoubleLine Core Fixed Income Fund Series; 2) DoubleLine Emerging Markets Fixed Income Fund Series; and 3) DoubleLine Shiller Enhanced Cape® Series) (collectively, "Doubleline" or "Plaintiffs" and together with Defendants, the "Parties").  Pursuant to Local Civil Rule 37.2 and Sections 2(b) and (d) of this Court's Individual Rules of Practice, Plaintiffs have requested a pre-motion conference regarding their contemplated motion to request an adverse inference instruction in respect of certain unavailable evidence.  As discussed further below, Plaintiffs' request is premature, both given the incomplete nature of the Parties' meet and confer process, and in light of the current status of discovery, where not a single document has been produced and where it is therefore impossible to determine whether any unavailable information can be replaced through additional discovery.  Accordingly, Defendants respectfully submit that Plaintiffs' request should be denied.

I. Background

The unavailability of the evidence for which Plaintiffs now seek an adverse inference instruction is neither a new fact nor in dispute.  On December 21, 2016, Odebrecht executed a plea agreement in respect of one count of conspiracy to violate the anti-bribery

The Honorable Barbara Moses, p. 2

provisions of the Foreign Corrupt Practices Act. *United States v. Odebrecht S.A.*, No. 16-cr-643 (E.D.N.Y.).[1] As part of that plea, Odebrecht admitted in a statement of facts (the "Statement of Facts") that, among other things, former officers and employees of Odebrecht (many of whom have separately pled to wrongdoing and served criminal sentences) operated a system called "MyWebDay," which "was used for making payment requests, processing payments and generating and populating spreadsheets that tracked and internally accounted for" bribery-related payments and that, "in or about January 2016 . . . employees and/or agents of [Odebrecht] intentionally caused the destruction of physical encryption keys needed to access the MyWebDay system," and that as a result, "significant evidence from the MyWebDay system was rendered inaccessible." Statement of Facts ¶¶ 25, 73.

As part of its plea agreement and in efforts to resolve issues regarding this past conduct, Odebrecht agreed that it would not contradict its acceptance of responsibility or any of the facts contained in the Statement of Facts. Plea Agreement ¶ 28, *Odebrecht S.A.*, No. 16-cr-643 (E.D.N.Y. Dec. 21, 2016). Accordingly, Defendants made significant admissions in their Answer, as well as in response to Plaintiffs' requests for admission, attached to the May 12 Letter. Defendants also have reaffirmed on multiple occasions that they cannot and will not take any position inconsistent with the Statement of Facts. *See*, *e.g.*, Answer at 1 n.2.

II. The Pre-Motion Conference is Premature Given the Parties' Incomplete Meet and Confer

Your Honor's individual practices provide that "[n]o discovery dispute will be heard unless the moving party . . . has first conferred in good faith with the adverse party or parties . . . in an attempt to resolve the dispute." Individual Rule of Practice 2(b). Plaintiffs have not satisfied this requirement.

Contrary to Plaintiffs' suggestion that the contemplated motion was discussed on a May 8, 2020 meet and confer, the concept of an adverse inference instruction was first raised by Plaintiffs at 6:15 PM on May 11, 2020, less than twenty-four hours before Plaintiffs filed the May 12 Letter. During that call, Defendants reiterated that they had no intention of contesting the facts contained in the Statement of Facts regarding the destruction of the MyWebDay encryption keys and the resulting unavailability of certain information, and requested time to consider the relief contemplated by Plaintiffs in order to determine whether a mutually agreeable resolution could be reached without the need for Court intervention. In particular, Defendants requested that Plaintiffs provide the specific adverse inference instruction Plaintiffs intended to request from Your Honor. *See* Ex. A at 8. Plaintiffs declined to provide additional information regarding the specific scope of their anticipated request, and instead unilaterally asserted that the Parties had reached "an impasse." *Id.* at 5. The May 12 Letter followed.

Because the May 12 Letter filed with the Court does not specify how Plaintiffs would propose to implement their requested adverse inference, Defendants again requested the terms of the proposed adverse inference instruction Plaintiffs intend to seek in the contemplated motion. *Id.* at 3.[2] As of the filing of this response, Plaintiffs have yet to provide any further

---

[1] As detailed in Plaintiffs' third amended complaint (ECF No. 61, the "TAC") and in Defendants' answer to the TAC (ECF No. 106, the "Answer"), the individuals involved in the underlying criminal conduct are no longer employed by Odebrecht and, in many cases, have pled guilty to criminal offenses in foreign jurisdictions.

[2] The precise terms of the proposed instruction are particularly important given Plaintiffs' current generalized request, which appears to contemplate an instruction that would cover a wide range of issues, including elements entirely unrelated to the MyWebDay information, such as Plaintiffs' claims of reliance and loss causation.

detail.  Instead, subsequent to filing the May 12 Letter, Plaintiffs informed Defendants that they would not agree to discuss a negotiated resolution of this dispute unless Defendants stipulated to judgment on all liability issues—notwithstanding that such a demand far exceeds any reasoned view of the scope of relief Plaintiffs could even conceivably seek in the form of an adverse inference, which is what their contemplated motion seeks.  *Id*. at 1.  By setting up this false dichotomy, Plaintiffs seek to burden this Court with an unnecessary dispute without an opportunity for the Parties to fairly resolve it.  This recent demand notwithstanding, and while reserving all rights, Defendants continue to be willing to meet and confer with Plaintiffs to determine whether there is a mutually agreeable resolution that would obviate the need to burden the Court with Plaintiffs' contemplated motion.

Given that Plaintiffs have not yet provided necessary detail regarding the relief they would request in their proposed motion—which has prevented any meaningful meet and confer process—and in light of Defendants' continued willingness to discuss a potential resolution, Defendants respectfully submit that Plaintiffs' request for a pre-motion conference be denied pending the Parties' further efforts to meet and confer.

III.    Plaintiffs' Contemplated Motion is Premature Given the Status of Discovery

Even if Plaintiffs had fulfilled their obligations to adequately meet and confer regarding their request (which they did not), Plaintiffs' contemplated motion would still be premature given the extraordinarily early stage of discovery in this action.

Under the Federal Rules of Civil Procedure, a party may seek spoliation-related sanctions in respect of information that "should have been preserved in the anticipation or conduct of litigation [if] lost because a party failed to take reasonable steps to preserve it, and [where] it cannot be restored or replaced through additional discovery."  *See* Fed. R. Civ. P. 37(e) (emphasis added); *see also* Fed. R. Civ. P. 37(e) Advisory Committee's Note ("Rule 37(e) directs that the initial focus should be on whether the lost information can be restored or replaced through additional discovery . . . .  If the information is restored or replaced, no further measures should be taken.").  Moreover, the party seeking sanctions is entitled to measures no greater than necessary to cure any prejudice suffered.  *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 685 F. Supp. 2d 456, 469 (S.D.N.Y. 2010), *abrogated on other grounds by Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135 (2d Cir. 2012) ("It is well accepted that a court should always impose the least harsh sanction that can provide an adequate remedy.").  Here, Plaintiffs cannot establish at this preliminary stage—more than eighteen months before the close of discovery—that the severe sanctions they request are warranted.

Although the May 12 Letter refers to the unavailability of "crucial evidence regarding the scope and nature of the Bribery Scheme," May 12 Letter at 2, it does not identify any specific alleged facts that have been rendered unavailable by virtue of the 2016 destruction of the MyWebDay encryption keys.  Nor have Plaintiffs suggested, much less demonstrated, that the information cannot be replaced or otherwise approximated through additional discovery.  And for good reason—not a single document has been produced in this case.  Indeed, although on February 26, 2020, Defendants provided to Plaintiffs proposed search terms that could be used to collect documents responsive to Defendants' requests for production, Plaintiffs have yet to provide a specific response or counter propose alternative or modified search terms.  Similarly, Plaintiffs have not yet proposed search terms for use in collecting documents in response to Plaintiffs' request for production, nor have Plaintiffs proposed custodians for their

The Honorable Barbara Moses, p. 4

requests. *See* Ex. B at 1. Given that discovery has not yet commenced in earnest, Plaintiffs simply cannot demonstrate that the unavailability of any MyWebDay information will prevent them from presenting their contentions regarding any element of their claims. Nor can Defendants assess, without the benefit of further progress in discovery, whether any asserted prejudice can be mitigated or addressed through alternative means.

Moreover, to the extent Plaintiffs have identified informally any particular fact or contention that they believe could not be presented to a jury as a result of the unavailable MyWebDay information, Defendants have been willing to explore alternatives to burdening the Court with unnecessary disputes. To date, Plaintiffs have identified only a single issue that they are concerned about with respect to the unavailable MyWebDay information: their perceived dispute regarding whether the total volume of bribe payments at issue in the case is $788 million, as stated in the Statement of Facts, or $3.3 billion, as asserted in the TAC. In an effort to resolve this perceived factual dispute, Defendants proposed on March 17, 2020 a stipulation by which Defendants would agree not to "raise any claim or defense in [this action] or otherwise assert that any element of any claim asserted in the TAC is not satisfied, on the basis that the total amount of [bribe payments during the relevant period] was any amount less than $3.3 billion." Ex. C at 2. Defendants further proposed to agree that "Plaintiffs shall not be required to establish, in order to satisfy any element of any claim asserted in the TAC, that the total amount of [bribe payments during the relevant period] was any amount more than $788 million." *Id.* at 3. Although Plaintiffs suggested on a May 8, 2020 meet and confer that they would propose revisions to the discussion draft of the stipulation, they have subsequently reversed course, and now have communicated that they are not willing to consider the terms of that stipulation.

At base, Plaintiffs are requesting an adverse inference instruction—the precise scope of which they have declined to specify—before any discovery has commenced and, at a minimum, two years before a jury would be empaneled. Because it remains to be seen (i) what, if any, facts or contentions cannot adequately be presented through use of other evidence, or (ii) whether there exist other means to eliminate from contention any perceived factual disputes that could arise from the unavailability of any evidence, Defendants believe Plaintiffs' contemplated motion is premature, and the Court should deny Plaintiffs' request for a pre-motion conference pending the completion of discovery.[3]

For the reasons set forth above, Defendants respectfully request that at this stage this Court deny Plaintiffs' request for a pre-motion conference regarding their contemplated motion to request sanctions for spoliation.

Sincerely,

*/s/ Luke A. Barefoot*

Luke A. Barefoot

Enclosure
cc:  All counsel of record (via ECF)

---

[3]  On the Parties' brief May 11 call, Plaintiffs suggested that their requested adverse inference instruction, if granted, could affect the scope of outstanding discovery. Of course, Defendants are entitled to rebut any presumption of prejudice resulting from the destruction of the MyWebDay encryption keys, including by pointing to the availability of substitute evidence, *see Pension Comm.*, 685 F. Supp. at 468, and Plaintiffs cannot artificially restrict the scope of discovery before it has commenced in order to stymie that right.