UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DOUBLELINE CAPITAL LP; DOUBLELINE INCOME SOLUTIONS FUND; and DOUBLELINE FUNDS TRUST (on behalf of its: 1) DOUBLELINE CORE FIXED INCOME FUND SERIES; 2) DOUBLELINE EMERGING MARKETS FIXED INCOME FUND SERIES; and 3) DOUBLELINE SHILLER ENHANCED CAPE® SERIES),<br><br>       Plaintiffs,<br><br>   v.<br><br>CONSTRUTORA NORBERTO ODEBRECHT, S.A.; ODEBRECHT ENGENHARIA E CONSTRUCAO S.A.; and ODEBRECHT, S.A.,<br><br>       Defendants. | No. 1:17-cv-04576-GHW |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR RULE 37 SANCTIONS AGAINST DEFENDANTS FOR REFUSAL TO COMPLY WITH THE <u>COURT'S OCTOBER 14, 2020 DISCOVERY ORDER</u>**

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................................1

II.  RELIEF REQUESTED................................................................................2

III. BACKGROUND INFORMATION ............................................................3

 A.   Plaintiffs' claims against the Defendants..............................................3

  1.   Material misrepresentations or omissions....................................4

  2.   Scienter .........................................................................................6

  3.   Reliance.........................................................................................6

  4.   OEC's successor liability ..............................................................7

 B.   Plaintiffs' RFP Nos. 1, 3 & 4...............................................................7

 C.   The Court's Orders compelling production of documents
  responsive to Plaintiffs' RFP Nos. 1, 3, & 4........................................8

 D.   Defendants' other tactics to deprive Plaintiffs of evidence .................10

  1.   Defendants' intentional destruction of documents ......................11

  2.   Defendants' defective Answer responses ..................................11

  3.   Defendants' refusal to answer Requests for Admission .............13

  4.   Defendants' refusal to answer Interrogatories ...........................13

IV.  LEGAL STANDARD..................................................................................14

V.   ARGUMENT ..............................................................................................16

 A.   The Court should grant a default judgment against Defendants............16

  1.   Defendants' noncompliance with the Order was (and is)
   willful. .........................................................................................17

  2.   Efficacy of lesser sanctions.........................................................18

  3.   Duration of noncompliance..........................................................18

  4.   Prior warnings ..............................................................................18

  5.   Defendants' noncompliance caused prejudice to Plaintiffs. .......19

 B.   Defendants are in contempt of the Order................................................20

C.     Plaintiff is entitled to a determination that certain facts shall be
       taken to be established for the purposes of this action...........................................23

D.     The Court should award Plaintiffs' fees and costs..................................................24

VI.    CONCLUSION............................................................................................................25

## TABLE OF AUTHORITIES

**Page**

### CASES

*Armstrong v. Guccione*,
  470 F.3d 89 (2d Cir. 2006)..................................................................................20

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007)....................................................................................7

*Bambu Sales, Inc. v. Ozak Trading Inc.*,
  58 F.3d 849 (2d Cir. 1995)...............................................................................17, 20

*Chase Bank USA., N.A. v. M. Harvey Rephen & Assocs., P.C.*,
  2019 WL 13046982 (S.D.N.Y. Aug. 16, 2019)..............................................21, 22

*Chase Bank USA., N.A. v. M. Harvey Rephen & Assocs., P.C.*,
  No. 1:19-MC-275-GHW, 2020 WL 1911185 (S.D.N.Y. Apr. 20, 2020)...................21, 22, 24

*Consumer Fin. Prot. Bureau v. MacKinnon*,
  No. 16-CV-880G(SR), 2021 WL 4461695 (W.D.N.Y. Sept. 29, 2021)................................14

*Daval Steel Prod., a Div. of Francosteel Corp. v. M/V Fakredine*,
  951 F.2d 1357 (2d Cir. 1991)................................................................................14

*DoubleLine Cap. LP v. Construtora Norberto Odebrecht, S.A.*,
  413 F. Supp. 3d 187 (S.D.N.Y. 2019).............................................................. *passim*

*DoubleLine Cap. LP v. Odebrecht Fin., Ltd.*,
  323 F. Supp. 3d 393 (S.D.N.Y. 2018).........................................................3, 4, 12

*Doubleline Cap. LP v. Odebrecht Fin., Ltd.*,
  No. 17CV4576GHWBCM, 2021 WL 1191527 (S.D.N.Y. Mar. 30, 2021) ..........................11

*El-Yafi v. 360 East 72nd Owners Corp.*,
  164 F.R.D. 12 (S.D.N.Y. 1995) ...........................................................................17

*Funk v. Belneftekhim*,
  861 F.3d 354 (2d Cir. 2017)................................................................................16

*GAMCO Invs., Inc. v. Vivendi, S.A.*,
  917 F. Supp. 2d 246 (S.D.N.Y. 2013)......................................................................7

*Gogo Apparel, Inc. v. Daruk Imports, Inc.*,
  No. 119CV05701LGSSDA, 2020 WL 4274793 (S.D.N.Y. June 11, 2020) .........................19

*In re Hebron Tech. Co., Ltd. Sec. Litig.*,
 No. 20 CIV. 4420 (PAE), 2021 WL 4341500 (S.D.N.Y. Sept. 22, 2021) ................................6

*Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*,
 2017 WL 3671036 (S.D.N.Y. July 18, 2017) .............................................................16, 23, 24

*Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*,
 2019 WL 4727537 (S.D.N.Y. Sept. 26, 2019) .............................................................. *passim*

*Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*,
 No. 16CV1318GBDBCM, 2018 WL 4760345 (S.D.N.Y. Sept. 28, 2018) ......................23, 24

*Knox v. Palestine Liberation Org.*,
 229 F.R.D. 65 (S.D.N.Y. 2005) ..........................................................................................24

*Loc. Union No. 40 of the Int'l Ass'n of Bridge v. Car-Wi Const.*,
 88 F. Supp. 3d 250 (S.D.N.Y. 2015) ..........................................................................15, 19, 20

*Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*,
 369 F.3d 645 (2d Cir. 2004) .................................................................................................22

*In re Pareteum Sec. Litig.*,
 No. 19 CIV. 9767 (AKH), 2021 WL 3540779 (S.D.N.Y. Aug. 11, 2021) ..............................6

*Ramgoolie v. Ramgoolie*,
 333 F.R.D. 30 (S.D.N.Y. 2019) ...........................................................................15, 16, 17, 18

*S. New England Tel. Co. v. Glob. NAPs Inc.*,
 624 F.3d 123 (2d Cir. 2010) .................................................................................15, 17, 18

*Schuster v. Charter Commc'ns, Inc.*,
 No. 18-CV-1826 (RJS), 2021 WL 1317370 (S.D.N.Y. Apr. 8, 2021) .............................17, 18

*Shcherbakovskiy v. Da Capo Al Fine, Ltd.*,
 490 F.3d 130 (2d Cir. 2007) .................................................................................................15

*Shillitani v. United States*,
 384 U.S. 364 (1966) .............................................................................................................20

*Sieck v. Russo*,
 869 F.2d 131 (2d Cir. 1989) .................................................................................................16

*State Farm Mut. Auto. Ins. Co. v. Fatiha*,
 No. 20-CV-443 (JPO), 2021 WL 1910658 (S.D.N.Y. May 12, 2021) ..................................19

*In re Sumitomo Copper Litig.*,
 204 F.R.D. 58 (S.D.N.Y. 2001) ............................................................................................17

*Update Art, Inc. v. Modiin Pub., Ltd.*,
    843 F.2d 67 (2d Cir. 1988)................................................................................................14

**OTHER AUTHORITIES**

Fed. R. Civ. P. 37 ................................................................................................... *passim*

# I.    INTRODUCTION

More than a year ago (on October 14, 2020), this Court issued an Order (the "Order") compelling Defendants to produce all responsive documents to Plaintiffs' Requests for Production ("RFP") Nos. 1, 3, and 4 within thirty days.  Defendants' request for reconsideration of the Order was denied.  On the day after their production was due, the Defendants instead filed a letter with the Court announcing their flat refusal to comply with the Order.  They have continued to flout the Order by refusing to produce any of the ordered discovery, and confirmed at the Court's recent status conference that they have no intention of complying in the future.

The crux of this lawsuit is that the Defendants made false and misleading statements (including in their reported financial results) by failing to disclose their role in a massive world-wide Bribery Scheme.  The information compelled by the Order was directly relevant to these allegations and is potentially the only remaining evidence available to Plaintiffs after Defendants' admitted destruction of the MyWebDay accounting system (for which they have already been sanctioned by this Court), obtaining Brazilian court rulings preventing disclosure of the Drousys email system, and their admitted destruction of all other electronically stored information that existed prior to early 2016.

The Federal Rules of Civil Procedure are designed to encourage the parties in a lawsuit to disclose all of the evidence relevant to the merits of the case without the need for court intervention.  However, to the extent that court rulings become necessary to settle disputes over the production of discovery, the Second Circuit and this Court have consistently warned "discovery orders are meant to be followed," and that "a party who flouts such orders does so at his peril."  Fed. R. Civ. P. 37 provides several types of remedies against parties that fail to comply with discovery obligations, including: A) granting a default judgment against a

noncompliant defendant; B) holding the offending party in contempt; and C) a determination that facts be conclusively established for the purposes of the action. *See* Section IV, *infra*.

Granting a default judgment against the Defendants is warranted because of their willful refusal to comply, the fact that lesser sanctions would be ineffective. the lengthy duration of their noncompliance, and the prejudice that their refusal to comply has caused. *See* Section V(A), *infra*.

Alternatively, the Court should hold Defendants in civil contempt and subject them to a significant fine for each day that they choose to remain in noncompliance. Such a finding is appropriate under the circumstances because the Order is clear and unambiguous and Defendants have announced their refusal to comply with its terms. *See* Section IV(B), *infra*.

Should the Court decline to issue a default judgment or hold Defendants in contempt, it should make a determination that certain facts are conclusively established for the purposes of this litigation, which is appropriate because the Defendants' misconduct has deprived Plaintiffs of key evidence needed to litigate these contested issues at trial. *See* Section IV(C), *infra*.

Lastly, whatever remedy is adopted by the Court, it should also award Plaintiffs reimbursement of their costs and fees in making this motion, pursuant to the requirements of Rule 37. *See* Section IV(D), *infra*.

## II.   RELIEF REQUESTED

Plaintiffs request that a default judgment be entered against the Defendants. Alternatively, Plaintiffs request that Defendants be held in civil contempt for their refusal to comply with the Order. As a third alternative, Plaintiffs request that the Court make certain findings of fact to remedy Defendants' failure to comply. In addition to any relief the Court grants, Plaintiffs also request reimbursement for their fees and costs in making this motion.

## III.   BACKGROUND INFORMATION

### A.   Plaintiffs' claims against the Defendants

Plaintiffs allege that they were damaged by purchasing bonds issued by an affiliate of the Defendants that were sold pursuant to offering materials that included false and misleading statements in violation of federal and state laws.  Plaintiffs' Second Amended Complaint ("SAC") contained allegations that essentially mirrored the stipulations contained in the Statement of Facts ("SOF") that was included in Defendants' plea agreement with the Department of Justice, alleging that between 2001 and 2016, Defendants paid more than $788 million in bribes to governmental officials in twelve countries, including Brazil.  SAC ¶¶ 49-53.[1] The Court ruled that these allegations were insufficient to state a claim that Defendants' reported financial statements were false and misleading in violation of federal and state law.  *DoubleLine Cap. LP v. Odebrecht Fin., Ltd.*, 323 F. Supp. 3d 393, 454-55 (S.D.N.Y. 2018) (hereafter "*DoubleLine I*").  Plaintiffs' Third Amended Complaint ("TAC") included additional and more specific factual allegations regarding the scope and impacts of the Bribery Scheme on Defendants' reported financial results.[2]  TAC ¶¶ 62, 75-76.  The Court denied Defendants' motion to dismiss, holding that the TAC's expanded allegations stated a valid claim that Defendant CNO's financial statements concerning the years from 2009 through 2014, and that other information in the offering materials, were false and misleading in violation of federal securities and state laws.  *DoubleLine Cap. LP v. Construtora Norberto Odebrecht, S.A.*, 413 F. Supp. 3d 187, 208 (S.D.N.Y. 2019) (hereafter "*DoubleLine II*").

---

[1] Second Amended Complaint (filed November 21, 2017), ECF No. 41.

[2] Third Amended Complaint (filed September 7, 2018), ECF No. 61.

The elements of Plaintiffs' Section 10(b) claim are: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *DoubleLine I*, 323 F. Supp. 3d at 434. Plaintiffs have also brought claims for negligent misrepresentations and fraud that require similar elements. The evidence Defendants are deliberately withholding in violation of the Order is relevant and important to many of the elements of these claims for the following reasons:

### 1. Material misrepresentations or omissions

The material misrepresentations or omissions Plaintiffs alleged include that CNO's financial statements were materially false because they violated Generally Accepted Accounting (GAAP) standards by: i) failing to disclose the nature and range of contingent liabilities attributable to the Bribery Scheme; ii) failed to identify illegally obtained contract revenue; and iii) failed to properly report bribes as contract expenses. *DoubleLine II*, 413 F. Supp. 3d at 207-209. Plaintiffs also allege that Defendants misrepresented their "financial strength" in their offering materials based upon this false reported financial information. *Id*. at 209-210. Plaintiffs' claims for fraudulent accounting depend upon the evidence compelled by the Order for the following reasons:

**<u>Failure to disclose contingent liabilities</u>**. Plaintiffs' claim regarding the failure to disclose contingent liabilities requires the accrual of expenses if the loss is "probable" and the disclosure of the loss if it is "more likely than not." *Id.* at 208. This claim in the SAC was dismissed, but the TAC's additional allegations that the amount of bribes increased dramatically from $60 million in 2006 to $420 million, $520 million, $730 million, $730 million, and $450 million in each year from 2010-2014, respectively, alleged a "dramatically escalating scheme" that was "more likely than not to be exposed." Further, the TAC alleged that the head of

structured operations warned Marcelo Odebrecht by 2009 that the Bribery Scheme posed extreme risk to the company. *Id*. (citing TAC ¶ 102). The Court found that "[g]iven these newly alleged facts, Plaintiffs adequately demonstrate that company officials thought the possibility of detection was more than remote by 2009, triggering their obligation to footnote the liability in any of the covered reporting periods." *Id*. The evidence compelled by the Order is central to Plaintiffs' ability to demonstrate Defendants' knowledge that exposure of the Bribery Scheme was "probable" (requiring accrual of expenses) or "more likely than not" (requiring disclosure of the contingency). Thus, *the larger the scheme that Plaintiffs can prove at trial, the more likely that its exposure was probable*. Hiding the evidence of the actual scope of the Bribery Scheme will severely impact Plaintiffs' ability to prove these issues at trial.

**Failing to identify illegally obtained contract revenue**. Plaintiffs also assert that Defendants' failure to distinguish revenue obtained by virtue of the Bribery Scheme from legitimate revenues violated GAAP. This claim was dismissed from the SAC because "Plaintiffs failed to identify which, if any, revenue derived from unlawfully obtained contracts should have been reported separately on CNO's financial disclosures." *Id*. The TAC's additional allegations identifying the revenues obtained from the Petrobras contract were sufficient to state a claim. *Id*. The evidence being withheld by Defendants is central to the amount of revenues they obtained from illicitly obtained contracts. Although the TAC's allegations regarding a single contract were sufficient to state a claim, Plaintiffs' ability to prevail at trial will depend upon demonstrating a larger and more material pattern. In sum, the violation of this standard is more certain and more material the larger the improper revenues that Defendants failed to distinguish.

**Failing to properly report bribes as contract expenses**. GAAP required Defendant CNO to recognize bribes as expenses in securing a contract. *Id*. at 209. These allegations in the

SAC were dismissed because "Plaintiffs provided only an aggregate amount of bribe payments made between 2001 and 2016" (*i.e.*, the "admissions" touted by Defendants). *Id.* But the TAC's claim was sustained because it alleged "at least one" specific contract and amount of the bribe paid. *Id.* Although the TAC's allegations regarding a single contract were sufficient to state a claim, Plaintiffs' ability to prevail at trial will depend upon demonstrating a larger and more material pattern. The withheld evidence is necessary to establish the amount of unreported revenues from all of the other illicit contracts to demonstrate both the violation, and the materiality of the violation.

### 2. Scienter

The nature of the Defendants' misconduct (and their motive and opportunity for doing so) would unquestionably be revealed in the documents provided to DOJ and other regulators, as well as in the depositions of its employees involved in the Bribery Scheme. *In re Hebron Tech. Co., Ltd. Sec. Litig.*, No. 20 CIV. 4420 (PAE), 2021 WL 4341500, at *10 (S.D.N.Y. Sept. 22, 2021) (scienter can be established by proving that "defendants knew facts or had access to non-public information contradicting their public statements" (citation omitted)). Further, and as described above, these documents are necessary to establish the size of the scheme, which also "can be relevant to the scienter inquiry." *In re Pareteum Sec. Litig.*, No. 19 CIV. 9767 (AKH), 2021 WL 3540779, at *17 (S.D.N.Y. Aug. 11, 2021) (citation omitted).

### 3. Reliance

Plaintiffs have alleged both substituted reliance under the "fraud on the market" presumption (TAC ¶ 299) and the *Affiliated Ute* presumption (TAC ¶ 300), and direct reliance on Defendants' material misrepresentations and omissions (TAC ¶¶ 294-298). Pursuant to the fraud on the market presumption, as long as the "plaintiffs can show that the alleged misrepresentation was *material* and publicly transmitted into a well-developed market, then reliance will be

presumed . . . ." *GAMCO Invs., Inc. v. Vivendi, S.A.*, 917 F. Supp. 2d 246, 252 (S.D.N.Y. 2013) (emphasis and alteration in original).  As described above, the documents compelled by the Order are central to showing whether the misrepresentations were material, and thus central to any fraud on the market analysis.

Likewise, to establish the "direct reliance" element of the common law claims (and the federal claim should the court not accept the fraud on the market presumption), a plaintiff must demonstrate that "but for the claimed misrepresentations or omissions, the plaintiff would not have entered into the detrimental securities transaction."  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 106 (2d Cir. 2007).  The size of the Bribery Scheme is unquestionably material to this analysis (*i.e.*, the larger the Bribery Scheme, the greater the circumstantial evidence that Plaintiffs would not have purchased the Notes had they known the truth about it). Accordingly, the evidence required to be produced by the Order has a substantial bearing on Plaintiffs' ability to prove actual reliance.

### 4.    OEC's successor liability

Plaintiffs also allege that OEC is liable for CNO's misconduct under a "successor liability" claim, which requires Plaintiffs to prove, *inter alia*, that OEC: i) expressly or impliedly assumed the liabilities of CNO; and ii) OEC is a "mere continuation" of CNO.  Information contained in the documents encompassed by the Order could be central to proving this claim For example, evidence provided to the Department of Justice or Brazilian or other foreign prosecutors could demonstrate that CNO's illicitly obtained contracts were instead held by OEC and/or that OEC assumed the identity of CNO.  *DoubleLine II*, 413 F. Supp. 3d at 214-15.

### B.    Plaintiffs' RFP Nos. 1, 3 & 4

Plaintiffs served their RFPs on the Defendants in November 2019.  RFP No. 1 sought all documents provided to the U.S. Department of Justice in connection with its investigation of the

Defendants.  RFP No. 3 sought all documents provided to the Brazilian federal police or any

other government or regulator, and RFP No. 4 sought all deposition transcripts related to any

such investigation and any written statements made by any of the Defendants in connection with

any such investigation:

| **RFP No. 1** | **RFP No. 3** | **RFP No. 4** |
|---|---|---|
| All DOCUMENTS provided to the United States Department of Justice or the United States Attorney's Office for the Eastern District of New York in connection with any investigation performed by those entities of any of the DEFENDANTS, including but not limited to the investigation leading to the PLEA AGREEMENT. | All DOCUMENTS provided to any governmental or other regulatory agency or panel in connection with any investigation performed by those entities of any of the DEFENDANTS, including but not limited to the "Lava Jato" investigation by the Federal Police of Brazil. | All deposition transcripts or written statements made by YOU to any governmental or other regulatory agency or panel in connection with any investigation performed by those entities of any of the DEFENDANTS, including but not limited to the "Lava Jato" investigation by the Federal Police of Brazil. |

Defendants made various boilerplate objections to these RFPs and refused to produce any

responsive documents, forcing Plaintiffs to file a motion to compel.

**C.     The Court's Orders compelling production of documents responsive to Plaintiffs' RFP Nos. 1, 3, & 4**

On September 1, 2020, Plaintiffs filed their Letter-Motion seeking an Order compelling

the Defendants to produce all documents responsive to Plaintiffs' RFP Nos. 1, 3, 4, and 5.  ECF

No. 114.  Defendants filed their letter in opposition on September 4, 2020, asserting the

argument that Brazilian law precluded them from producing documents responsive to RFP No. 5

*but making no such arguments with respect to RFP Nos. 1, 3, and 4*.  ECF No. 115.  Defendants

labeled Plaintiffs' concerns that Defendants refused to produce responsive documents a "false

claim" and specifically represented to the Court that they would produce all documents

responsive to RFP Nos. 1, 3, and 4:

> Contrary to the false claim in the September 1 Letter, Defendants have not "refused to produce responsive documents." Sept. 1 Letter at 3. To the contrary, Defendants have, both in meet and confers and in email, *continuously stated that Defendants would in no way withhold any documents responsive to RFP numbers 1, 3, and 4 and would produce such documents* . . . .
>
> *   *   *
>
> At bottom, the *Parties appear to agree that documents responsive to RFP numbers 1, 3, and 4 shall be produced* . . . .

ECF No. 115 at 2-3 (emphasis added).

**The 10/13/2020 Hearing**.  During the discovery conference before the Court on October 13, 2020, Defendants argued that Brazilian law prevented them from producing documents responsive to RFP No. 5, *but again made no such arguments regarding RFP Nos. 1, 3, and 4*. Indeed, Defendants committed to "do everything we can to comply with that [30-day] timeline" to produce all documents responsive to RFP Nos. 1, 3, and 4.  ECF No. 123 at 16:15-16.

**The 10/14/2020 Order**.  On October 14, 2020, the Court issued the Order, compelling the production of all nonprivileged documents responsive to Plaintiffs' RFP Nos. 1, 3, and 4:

> For the reasons stated on the record during the October 13 conference, it is hereby ORDERED that:
>
> **1.  Requests for Production Nos. 1, 3, and 4**
>
> No later than November 12, 2020, defendants shall produce all nonprivileged documents responsive to plaintiffs' Requests for Production (RFP) Nos. 1, 3, and 4, as narrowed by plaintiffs in their September 1, 2020 letter-motion and their correspondence with defendants.

**The October 30, 2020 Order**.  On October 27, 2020, Defendants sought to have the Court reconsider the Order by making an untimely attempt to extend their arguments regarding RFP No. 5 to prevent the production of documents responsive to RFP Nos. 1, 3, and 4.  ECF No. 125.  Plaintiffs opposed this motion for reconsideration on October 28, 2020.  ECF No. 126.  On

October 30, 2020, the Court denied Defendants' motion for reconsideration for "substantially the reasons set forth in plaintiffs' October 28 letter."  ECF No. 127.

**Defendants' Nov. 13, 2020 Letter**.  On November 13, 2020 (the day after their ordered production was due), Defendants filed a letter (back-dated to the previous day) with the Court. ECF No. 144.  This letter did not specifically seek any type of relief, instead appearing to *merely be a notification of Defendants' intent to not comply with this Court's October 14, 2020 and October 30, 2020 Orders*.  *Id*. at 3.

**The October 6, 2021 Order**.  On January 5, 2021, Plaintiffs filed a letter-motion again seeking to compel the production of all documents responsive to RFP Nos. 1, 3, and 4.  ECF No. 167.  Defendants opposed this request on January 8, 2021, on the basis that Plaintiffs' letter motion "does not seek any new relief," thus again acknowledging their responsibilities to produce documents responsive to RFP Nos. 1, 3, and 4.  ECF No. 172.  On October 6, 2021, the Court agreed and denied the requested relief as moot because it had already been granted.  ECF No. 190 at 30-31 ("I issued that order pursuant to Fed. R. Civ. P. 37(a) on October 14, 2020, refused to reconsider it on October 30, 2020, and see no need to issue it again.").

**The October 13, 2021 Status Conference**.  During the status conference held by the Court on October 13, 2021, Defendants again made clear that they have no intention of complying with the Order and will continue to thumb their nose at it in the future.  ECF No. 206 at 8:16-9:4 (noting that "there is an order to produce those documents" but instead of producing responsive documents, they will contest a sanction motion).

## D.     Defendants' other tactics to deprive Plaintiffs of evidence

Unfortunately, Defendants' refusal to comply with this Court's Orders that they produce all documents responsive to RFP Nos. 1, 3, and 4 is just another tactic in their arsenal of dilatory tactics.  Defendants have completely stonewalled discovery into the Bribery Scheme and other

important aspects of this action, including by: 1) willfully destroying key evidence; 2) refusing to correct their defective Answer; 3) refusing to accurately answer requests for admission; and 4) refusing to answer interrogatories.

### 1.   Defendants' intentional destruction of documents

This Court has already sanctioned the Defendants for the willful destruction of the MyWebDay system. *Doubleline Cap. LP v. Odebrecht Fin., Ltd.*, No. 17CV4576GHWBCM, 2021 WL 1191527, at \*10 (S.D.N.Y. Mar. 30, 2021).  But Defendants' willful destruction of evidence apparently did not end with the MyWebDay system.  In a March 17, 2020 email to Plaintiffs' counsel, Defendants admitted to the destruction of all, or virtually all, electronically stored information that existed on their systems before early 2016:

> Finally, although we are continuing to review and confirm, our updated understanding of Defendants' document retention policies is such ***that we now expect there to be very few documents from before early 2016***.[3]

Plaintiffs' claims regarding Defendants' reported financial results relate to the years from 2009 through 2014.  By destroying all evidence "before early 2016," Defendants have covered-up all evidence of their misconduct.  Indeed, Defendants admitted as much in the same email to Plaintiffs' counsel, warning that any evidence surviving Defendants' purge is "*likely of minimal relevance*." Barth Decl. Ex. A at 1.  Defendants again admitted to destroying this crucial evidence during the Court's October 13, 2020 hearing. ECF No. 123 at 12:24-14:2.

### 2.   Defendants' defective Answer responses

Defendants often try to excuse their discovery misconduct during this case by touting their "significant" and "substantial" admissions to the Court.  *See, e.g.*, ECF No. 110 at 2.

---

[3] March 17, 2020 email from Defendants' counsel to Plaintiffs' counsel.  This email was previously submitted at ECF No. 114-3.  For the Court's convenience, a copy is also attached as Exhibit A to the Declaration of Karl P. Barth in support of this motion ("Barth Decl.".

("Defendants made significant admissions in their Answer, as well as in response to Plaintiffs'

requests for admission."); ECF No. 132 at 1, 9, 14-15 (claiming "significant admissions

regarding the bribery scheme" that are a "ready alternative source of information").  But in truth,

Defendants' "admissions" merely repeat the stipulated facts regarding the Bribery Scheme that

they were forced to make in their plea agreement with the Department of Justice, and which this

Court has already ruled are insufficient to state a claim.  *DoubleLine I*, 323 F. Supp. 3d at 454-

55.  Defendants filed their answer to the TAC on January 14, 2020.  ECF No. 106.  In defiance

of the Fed. R. Civ. P. 8(b)(2) requirement that an answer must "fairly respond to the substance of

the allegations," Defendants' Answer does little more than repeat the factual stipulations from

the SOF, and expressly limits any "admissions" to the precise language of the SOF (which this

Court has previously ruled were insufficient to state a claim), *regardless of its relevance to the*

*actual allegation to which it purports to respond*.  For example, Answer ¶ 62 purposely ignores

the actual allegations of the TAC and repeats the exact language of the SOF:

| Paragraph | Third Amended Complaint | Answer |
|:---:|---|---|
| 62 | Unbeknown to Plaintiffs, **between 2006 and 2014**, Defendants CNO and Odebrecht paid **at least $3.3 billion** in bribes to government officials in Brazil and at least 12 other countries in order to influence the award of large construction contracts to Defendant CNO (the "Bribery and Kickback Scheme"). (emphasis added) | Defendants admit that, **as reflected in the SOF**, Odebrecht and CNO paid bribes **between 2001 and 2016** to government officials in twelve countries, including Brazil, in order to obtain and retain construction projects, aver that the amount of bribes paid was **more than $788 million**, but deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding what was known to Plaintiffs. (emphasis added). |

Defendants employ this same tactic throughout their Answer in violation of the plain

requirements of Fed. R. Civ. P. 8(b)(2). *See, e.g.*, Answer ¶¶ 64-66, 68-72, 75-84, 86-88, 105,

107, 113, 118, 135, 155, 172, 191.  "Admissions" limited to facts that the Court has ruled are

insufficient to even state a claim cannot remedy Defendants' noncompliance with the Order.

### 3. Defendants' refusal to answer Requests for Admission

Denied document discovery by the Defendants, Plaintiffs sought to instead obtain some of the factual information they need to prove their case by serving requests for admission, but Defendants refused to accurately answer these RFAs.  For example, TAC ¶¶ 75-76 identified numerous specific payments made to Brazilian (TAC ¶ 75) and other foreign officials (TAC ¶ 76).  RFA Nos. 24 and 25 asked Defendants to admit to the accuracy of TAC ¶¶ 75 and 76, respectively.  But in response to each of these RFAs. Defendants claimed to "lack knowledge or information sufficient to form a belief about the truth of this statement."  Barth Decl. Ex. B.[4]  But it is inconceivable that Defendants lack knowledge of payments that they themselves have made.  Further, Defendants specifically denied other RFAs seeking admissions regarding the amount of aggregate bribes paid.  *See id*. (responses to RFAs 20-23).  Because, consistent with Rule 11, Defendants could not have denied RFAs 20-23 without knowledge of the amounts that they paid, their responses to RFAs 24 and 25 are obviously false.

### 4. Defendants' refusal to answer Interrogatories

On November 1, 2021, Defendants served responses to Plaintiffs' First Set of Interrogatories.  Barth Decl. Ex. C.[5]  In these responses, Defendants again flatly refused to answer factual inquiries regarding the Bribery Scheme.  *See* Barth Decl. Ex. C (responses to Interrogatory Nos. 3, 4, 5, 6, 10).  Among their listed objections to these interrogatories was that they call for "the identification of information that was requested by and/or produced to, the United States Department of Justice."  *See* Barth Decl. Ex. C (responses to Interrogatory Nos. 3,

---

[4] Defendants CNO S.A., Odebrecht Engenharia E Construção S.A. and Odebrecht S.A. – Em Recuperação Judicial's Responses and Objections to Plaintiffs Doubleline Capital LP, Doubleline Income Solutions Fund, and Doubleline Funds Trust (on Behalf of its: 1) Doubleline Core Fixed Income Fund Series; 2) Doubleline Emerging Markets Fixed Income Fund Series; and 3) Doubleline Shiller Enhanced Cape® Series)'s First Set of Requests for Admission (Mar. 30, 2020).

[5] Defendants' Responses and Objections to Plaintiffs' First Set of Interrogatories (Nov. 1, 2021).

4, 5).[6]  Because the Order specifically requires Defendants to produce the documents that they have provided to the DOJ, refusing to answer based upon this objection further demonstrates their continuing contempt for the Order as well as their intention to disregard it in the future.[7]

The above-noted improper tactics have prevented Plaintiffs from obtaining *any* important evidence relating to the Bribery Scheme and each are "part of a contemptible pattern of dilatory tactics" that should "no longer be countenanced."  *Consumer Fin. Prot. Bureau v. MacKinnon*, No. 16-CV-880G(SR), 2021 WL 4461695, at *4 (W.D.N.Y. Sept. 29, 2021).

## IV.    LEGAL STANDARD

The discovery provisions of the Federal Rules of Civil Procedure are "designed to achieve disclosure of all the evidence relevant to the merits of a controversy." *Daval Steel Prod., a Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1365 (2d Cir. 1991).  Compliance with discovery orders "is necessary to the integrity of our judicial process."  *Update Art, Inc. v. Modiin Pub., Ltd.*, 843 F.2d 67, 73 (2d Cir. 1988).  "When a party seeks to frustrate this design by disobeying discovery orders, thereby preventing disclosure of facts essential to an adjudication on the merits, severe sanctions are appropriate."  *Daval Steel Prod.*, 951 F.2d at 1365.  Rule 37 provides a court with a wide range of options to discipline a party that fails to comply with a discovery order, including rendering a default judgment against the disobedient party, treating the failure as contempt of court, and directing that designated facts be taken as established for purposes of the action.  Fed. R. Civ. P. 37(b)(2)(A)(i), (vi), and (vii).  The Court should impose the least harsh sanction that will remedy the discovery violation and deter such

---

[6] To the extent that their answers referred to the same non-responsive recitation of the stipulated SOF in their plea agreement they should be treated as a failure to respond pursuant to Fed. R. Civ. P. 37(a)(4).

[7] Further, Defendants confirmed they will refuse to respond to written discovery concerning the Bribery Scheme in a recent filing with this Court.  See Defs.' Mem. of Law in Opp'n to Pls.' Rule 72 Objections at 15 n.10 (Oct. 22, 2021), ECF No. 209.

conduct in the future, but it "need not exhaust possible lesser sanctions" before imposing harsher sanctions. *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC* ("*Joint Stock Co. III*"), 2019 WL 4727537, at *29 (S.D.N.Y. Sept. 26, 2019).

District courts have "wide discretion" in choosing an appropriate sanction. *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 135 (2d Cir. 2007). Their discretion is guided by the four "*Agiwal* factors": "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of noncompliance." *Joint Stock Co. III*, 2019 WL 4727537, at *29 (quoting *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010) (quoting *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302-03 (2d Cir. 2009))). In addition, courts often consider any prejudice suffered by the movant. *See, e.g.*, *Loc. Union No. 40 of the Int'l Ass'n of Bridge v. Car-Wi Const.*, 88 F. Supp. 3d 250, 263 (S.D.N.Y. 2015). These factors are not exclusive, and sanctions may be imposed where only some of the factors have been implicated. *S. New England Tel. Co.*, 624 F.3d at 144. Any decision under Rule 37 should be made in light of the full record in the case. *Ramgoolie v. Ramgoolie*, 333 F.R.D. 30, 35 (S.D.N.Y. 2019).

"Disciplinary sanctions under Rule 37 are intended to serve three purposes. First, they ensure that a party will not benefit from its own failure to comply. Second, they are specific deterrents and seek to obtain compliance with the particular order issued. Third, they are intended to serve a general deterrent effect on the case at hand and on other litigation, provided that the party against whom they are imposed was in some sense at fault." *Joint Stock Co. III*, 2019 WL 4727537, at *28. In imposing sanctions, a court's "proper objective" is "to restore plaintiffs insofar as possible to the position they would have been in absent defendants'

discovery defiance." *Funk v. Belneftekhim*, 861 F.3d 354, 372 (2d Cir. 2017) (internal quotation marks omitted).

## V.   ARGUMENT

Defendants have unequivocally stated that they refuse to comply with this Court's Order compelling them to produce all documents responsive to RFP Nos. 1, 3, and 4.  Because their refusal to comply with the Order is willful, has gone on for more than a year, and has caused substantial prejudice to the Plaintiffs, a default judgment should be entered against the Defendants.  Alternatively, the Defendants should be found in contempt, and a fine significant enough to compel their compliance should be levied against them.  Should the Court not grant either of these remedies, Plaintiffs should be awarded a determination that certain facts shall be taken to be established for the purposes of this action.

**A.   The Court should grant a default judgment against Defendants.**

Fed. R. Civ. P. 37(b)(2)(A)(vi) provides that a court may render a default judgment against a party for failure to comply with a discovery order.  The decision whether to impose such a sanction is within the district court's sound discretion.  *Ramgoolie*, 333 F.R.D. at 34 (citing *World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, 159 (2d Cir. 2012)).  "'Although entry of a default judgment is an extreme measure, discovery orders are meant to be followed' and '[a] party who flouts such orders does so at his peril.'  *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, 2017 WL 3671036, at *20 ("*Joint Stock Co. I*") (S.D.N.Y. July 18, 2017) (alteration in original) (quoting *Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 853 (2d Cir. 1995)).  District courts should not hesitate issuing a default judgment for discovery abuses when deemed necessary. As stated by the Second Circuit, "[w]ere we to adopt a position that overly inhibits the imposition of the harsher sanctions authorized by Rule 37, we would turn the rule into a paper tiger" and "would encourage dilatory tactics."  *Sieck v.*

*Russo*, 869 F.2d 131, 134 (2d Cir. 1989) (internal quotation marks omitted).  Accordingly, courts routinely enter default judgments against parties failing to comply with discovery orders.  *See, e.g.*, *Bambu Sales, Inc.*, 58 F.3d at 853-54; *Schuster v. Charter Commc'ns, Inc.*, No. 18-CV-1826 (RJS), 2021 WL 1317370, at *7 (S.D.N.Y. Apr. 8, 2021); *Ramgoolie*, 333 F.R.D. at 39; *El-Yafi v. 360 East 72nd Owners Corp.*, 164 F.R.D. 12, 17 (S.D.N.Y. 1995) (entry of a default judgment for violation of a discovery order "has long been recognized as appropriate"). The four *Agiwal* factors confirm that a default judgment is appropriate here.

### 1.    Defendants' noncompliance with the Order was (and is) willful.

Although it is a severe punishment, entry of a default judgment is appropriate upon a finding of "willfulness, bad faith, or any fault" on the part of the noncompliant party.  *S. New England Tel. Co.*, 624 F.3d at 144; *In re Sumitomo Copper Litig.*, 204 F.R.D. 58, 60 (S.D.N.Y. 2001) ("Although the entry of a default judgment is a harsh remedy, it is appropriate in the face of an advertent disregard for a court order.").  "Noncompliance with discovery orders is considered willful when the court's orders have been clear, when the party has understood them, and when the party's noncompliance is not due to factors beyond the party's control."  *Joint Stock Co. III*, 2019 WL 4727537, at *32.  Here, there is no question that Defendants' failure is willful.  As described in Section III(C), *supra*, they: i) acknowledged their obligation to produce the responsive documents at the October 13, 2020 hearing; ii) acknowledged the Order in their November 13, 2020 letter to the Court; and iii) again acknowledged their obligations under the Order at the Court's hearing on October 13, 2021.  Defendants also announced their knowing refusal to comply with the Order in their November 13, 2020 letter, and again at the October 13, 2021 hearing.  Under these circumstances, there can be no dispute that Defendants' flouting of the Order is willful and in bad faith.

### 2. Efficacy of lesser sanctions

"[D]istrict courts are not required to exhaust possible lesser sanctions before imposing dismissal or default if such a sanction is appropriate on the overall record." *S. New England Tel. Co.*, 624 F.3d at 148 (citation omitted).  The entire record of this case shows that a lesser sanction will not yield a different result.  Defendants admittedly refuse to comply with the Order and have left no doubt that they will not comply in the future.  Lesser sanctions are ineffective and default is "an appropriate and necessary sanction" where a party has demonstrated its "deliberate and persistent noncompliance" with a discovery order.  *Schuster*, 2021 WL 1317370, at *7 (quoting *Embuscado v. DC Comics*, 347 F. App'x 700, 701 (2d Cir. 2009)).

### 3. Duration of noncompliance

The Second Circuit has "regularly upheld the imposition of dispositive sanctions when a party's dilatory tactics have persisted for several months."  *Schuster*, 2021 WL 1317370, at *7 (collecting cases); *Joint Stock Co. III*, 2019 WL 4727537, at *33 (collecting cases).  And periods of noncompliance greater than five months favor a default judgment sanction even more heavily. *Ramgoolie*, 333 F.R.D. at 37 (collecting cases).  Here, Defendants' period of noncompliance will exceed one year before this motion is fully briefed, and they have stated that they will continue to defy the Order into the future.  This lengthy period of noncompliance (and stated refusal to comply in the future) easily justifies the issuance of a default judgment.  *See, e.g.*, *Schuster*, 2021 WL 1317370, at *7 ("[N]early seven and a half months of such behavior therefore weigh strongly in favor of the dismissal of his case.").

### 4. Prior warnings

"Parties and counsel have no absolute entitlement to be 'warned' that they disobey court orders at their peril." *Joint Stock Co. III*, 2019 WL 4727537, at *34 (quoting *Daval Steel Prods.*, 951 F.2d at 1366).  Defendants are represented by highly experienced counsel that are

"chargeable with knowing the consequences of violating a court order." *Id.* (quoting *Grammar v. Sharinn & Lipshie, P.C.*, 2016 WL 525478, at *4 (S.D.N.Y. Feb. 8, 2016)).  Defendants cannot be surprised by this eminently foreseeable consequence.  Likewise, this motion itself provides notice to Defendants of the potential for a default by this motion, and gives Defendants an opportunity to contest it in their opposition.  *State Farm Mut. Auto. Ins. Co. v. Fatiha*, No. 20-CV-443 (JPO), 2021 WL 1910658, at *2 (S.D.N.Y. May 12, 2021).  Should the Court require an explicit warning notifying Defendants of the possibility of a default judgment, Plaintiffs respectfully request that the Court issue them an Order to show cause why this sanction should not be awarded.

     **5.**     **Defendants' noncompliance caused prejudice to Plaintiffs.**

     Judges in this district often also consider the prejudice suffered by the opposition when assessing the propriety of a sanctions motion against a noncompliant party.  *Loc. Union No. 40 of the Int'l Ass'n of Bridge*, 88 F. Supp. 3d at 262.  Although prejudice may "serve as a compelling consideration in support of dispositive relief . . . a lack of prejudice should not be given significant weight in the overall analysis." *Id.* (citing *S. New England Tel. Co.*, 624 F.3d at 148-49 ("[W]e, along with the Supreme Court, have consistently rejected the 'no harm, no foul' standard for evaluating discovery sanctions . . . .")).

     The evidence compelled by the Order is crucial to Plaintiffs' ability to prove their claims at trial.  *See* Section III(A), *supra*.  Particularly in light of their admitted destruction of the MyWebDay system and all of their pre-2016 ESI, Defendants' attempt to deprive Plaintiffs of the evidence necessary to prove their case at trial is unquestionably prejudicial.  *Gogo Apparel, Inc. v. Daruk Imports, Inc.*, No. 119CV05701LGSSDA, 2020 WL 4274793, at *4 (S.D.N.Y. June 11, 2020).  Regardless, "a probing analysis of the underlying, unproduced discovery is not

itself necessary to find prejudice" because "courts regularly equate prejudice and undue delay." *Loc. Union No. 40 of the Int'l Ass'n of Bridge*, 88 F. Supp. 3d at 267.

The Second Circuit has made clear its approval of default judgment as a sanction for deliberate obstruction of discovery and a party thumbing their nose at discovery orders:

> Although entry of a default judgment is an extreme measure, discovery orders are meant to be followed. A party who flouts such orders does so at his peril. Defendants rolled the dice on the district court's tolerance for deliberate obstruction, and they lost. We have no intention of letting them return to the table.

*Bambu Sales, Inc.*, 58 F.3d at 853.  This same rationale applies here. The Court's Order unequivocally compelled production of all documents responsive to RFP Nos. 1, 3, and 4. The discovery of the responsive documents is necessary and material for Plaintiffs to prosecute their claims against the Defendants. The Defendants have willfully flouted this Order and refuse to adhere to their discovery obligations. Accordingly, the Defendants' Answer should be stricken and default judgments should be entered against them.

**B.    Defendants are in contempt of the Order.**

Alternatively, Plaintiffs request that the Court find Defendants to be in civil contempt and issue a fine significant enough to induce compliance with the Order.  This case represents the highly unusual situation in which a party has announced its willful refusal to comply with an order issued by this Court.  Fed. R. Civ. P. 37(b)(2)(A)(vii) provides that a party disobeying a discovery order may be treated as being in contempt of court.  Likewise, the Court may also hold a party refusing to comply with its orders in contempt pursuant to the Court's inherent powers. *Shillitani v. United States*, 384 U.S. 364, 370 (1966) ("There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt.").[8]  Under

---

[8] *See also Armstrong v. Guccione*, 470 F.3d 89, 103 (2d Cir. 2006) (The power to confine to coerce compliance with court orders is "a fundamental and well-established incident of judicial power . . . .").

either Rule 37 or the Court's inherent powers, a party may be held in civil contempt for failure to comply with a court order if "(1) the order the party failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted to comply in a reasonable manner." *Chase Bank USA., N.A. v. M. Harvey Rephen & Assocs., P.C.*, No. 1:19-MC-275-GHW, 2020 WL 1911185, at *2 (S.D.N.Y. Apr. 20, 2020) (quoting *CBS Broadcasting Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 98 (2d Cir. 2016)).

Here, there is no doubt that all three prongs have been met. The Order clearly and unambiguously required Defendants to produce "all nonprivileged documents responsive to plaintiffs' Requests for Production (RFP) Nos. 1, 3 and 4 . . ." See *Chase Bank USA., N.A. v. M. Harvey Rephen & Assocs., P.C.*,2019 WL 13046982, at *2 (S.D.N.Y. Aug. 16, 2019) (two-page order compelling production of "all documents responsive to the Subpoena" was clear and unambiguous). Indeed, Defendants have acknowledged the precise scope of the production required by the Order on several occasions. See Defendants' Nov. 13, 2020 Letter to Court (ECF No. 144) at1; October 13, 2021 Status Conference Transcript (ECF No. 206) at 5:13-19; 8:16-20 (noting that "there is an order to produce those documents"). Further, Defendants committed to produce these specific documents more than a year ago. See October 13, 2020 Hearing Transcript (ECF No. 123) at 11:18-12:6, 16:18-17:17. The Order was not only clear and unambiguous, its scope and requirements were specifically understood by the Defendants. Defendants' noncompliance with the Order is undisputed as is their lack of any diligent attempt to comply with the Order in a reasonable manner. To the contrary, Defendants have flouted this Order for more than a year, and at the recent status conference confirmed their outright refusal to comply with the Order in the future. ECF No. 206 at 8:16-9:4.

To obtain an order of contempt, the Court is not required to find that the violation of the order was willful.  However, Defendants' conduct in flouting the Order is unquestionably willful. A party's conduct in failing to comply with a court order is willful if the party "had actual notice of the court's order, was able to comply with it, did not seek to have it modified, and did not make a good faith effort to comply." *Chase Bank USA., N.A.*, 2020 WL 1911185, at *3 (citation omitted).

"The imposition of civil contempt sanctions may serve dual purposes: to secure future compliance with court orders and to compensate the party that has been wronged." *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 657 (2d Cir. 2004).  In devising a remedy for a party or non-party's civil contempt, courts must consider: "(1) the character and magnitude of the harm threatened by the continued contumacy; (2) the probable effectiveness of any suggested sanction in bringing about compliance; and (3) the contemnor's financial resources and the consequent seriousness of the burden of the sanction upon [it]." *Chase Bank USA., N.A.*, 2019 WL 13046982, at *4 (alteration in original) (quoting *Dole Fresh Fruit Co. v. United Banana Co.*, 821 F.2d 106, 110 (2d Cir. 1987)).  Essentially, a fine must "be substantial enough to make it more economical for [the contemnor] to comply than not to comply." *Id*. (alteration in original) (quoting *Perfect Fit Indus., Inc. v. Acme Quilting Co.*, 673 F.2d 53, 57 (2d Cir. 1982)).

The potential damages in this case exceed $50 million.  An insignificant or trivial fine levied against the Defendants will not make it more economical for the Defendants to comply than not to comply.  Accordingly, Plaintiffs respectfully request that the Court fine the Defendants at least $10,000 per day for each day that they continue to violate the Order.

**C.**   **Plaintiff is entitled to a determination that certain facts shall be taken to be established for the purposes of this action.**

Should the Court decline to issue a default judgment or find the Defendants to be in civil contempt, Plaintiffs respectfully request a determination that certain facts are to be established for this action. Fed. R. Civ. P. 37(b)(2)(A)(i) provides that the Court may "direct[] that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims." "Where the discovery misconduct has deprived the opposing party of key evidence needed to litigate a contested issue, an order prohibiting the disobedient party from contesting that issue—or simply directing that the matter be taken as established—is also appropriate." *Joint Stock Co. I*, 2017 WL 3671036, at *20. "An order directing that certain facts be taken as established is also wholly consistent the purposes of sanctions under Rule 37, which are, *inter alia*, to ensure that a party will not benefit from its failure to comply with a discovery order, and to deter noncompliance, both in the particular case and in litigation in general." *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC* ("*Joint Stock Co. II*"), No. 16CV1318GBDBCM, 2018 WL 4760345, at *13 (S.D.N.Y. Sept. 28, 2018). Here, the Defendants have deprived Plaintiffs of the "key evidence needed to litigate" the contested issues of whether: 1) Defendants made material false statements or omissions in their offering materials; 2) whether these false statements were made with the requisite state of mind (scienter); 3) whether Plaintiffs relied upon these false statements or omissions; and 4) whether OEC is the successor of CNO. *See* Section III(A), *supra*. Accordingly, Plaintiffs respectfully request that the Court establish as a sanction facts sufficient to determine that the following issues have been determined conclusively for the purposes of this litigation:

- Defendants made false statements in their offering materials regarding the Notes;

- Defendants' false statements were made with scienter;

- Plaintiffs relied upon the false statements; and

- OEC is the successor of CNO.

The requested sanction is consistent with the breadth and particularity of similar sanctions in other actions before this Court and in this District. *See, e.g.*, *Joint Stock Co. I*, 2017 WL 3671036, at \*34 (establishing that noncompliant party was the "agent and representative with respect to the conduct at issue in this action"); *Joint Stock Co. II*, 2018 WL 4760345, at \*13; *Knox v. Palestine Liberation Org.*, 229 F.R.D. 65, 71 (S.D.N.Y. 2005) (establishing as a sanction "*facts sufficient to permit the exercise of personal jurisdiction over defendants*" (emphasis added)).

**D.     The Court should award Plaintiffs' fees and costs.**

In addition to any other remedies that may be ordered, in a motion brought by one party against another for failure to comply with a discovery order, "the court *must* order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C) (emphasis added); *see also Joint Stock Co. III*, 2019 WL 4727537, at \*18.  The Court need not find that the party's violation of a court order was willful to award fees and costs.  However, a finding of willfulness "strongly supports" such relief and "a district court, having found willful contempt, would need to articulate persuasive grounds for any denial of compensation for the reasonable legal costs to the victim of contempt." *Chase Bank USA.*, 2020 WL 1911185, at \*2. Accordingly, Plaintiffs respectfully request that the Court order the Defendants to pay the reasonable costs and fees expended by Plaintiffs' counsel in making this motion.

## VI.   CONCLUSION

For the reasons stated herein, the Court should GRANT Plaintiffs' motion for default judgment.

DATED: November 4, 2021.

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By:   *DRAFT*
       Steve W. Berman
       Karl P. Barth
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Tel:  (206) 623-7292
Fax: (206) 623-0594
steve@hbsslaw.com
karlb@hbsslaw.com

*Counsel for Plaintiffs*